UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIO GAMEZ, | Case No.   1:26-cv-00297-KES-EPG |
| Plaintiff, | ORDER GRANTING COUNTY OF FRESNO'S MOTION FOR A MORE DEFINITE STATEMENT |
| v. | |
| COUNTY OF FRESNO, | (ECF No. 10) |
| Defendant. | |

## I.     INTRODUCTION

Defendant County of Fresno (Defendant) removed this case to this Court on January 14, 2026. (ECF No. 1). Plaintiff Elio Gamez's underlying state court complaint alleges civil rights and negligence claims against Defendant and Does 1-10 stemming from Defendants' alleged failure to provide Plaintiff medical care and retaliation against him. (ECF No. 1-1, pp. 3, 6-8).

Relying on a recent Ninth Circuit decision addressing "shotgun pleadings," *Gibson v. City of Portland*, 165 F.4th 1265 (9th Cir. 2026), Defendant moves for a more definite statement, *see* Fed. R. Civ. P. 12(e), of Plaintiff's first claim asserting civil rights violations.  (ECF No. 10, p. 3).

Upon consideration, the Court will grant Defendant's motion for a more definite statement as specified below.  *Wood v. City of Garden Grove Officer Perkins*, No. SACV 04-00282-DOC (SS), 2006 WL 8435068, at *11 n.14 (C.D. Cal. May 30, 2006) ("A Rule 12 (e) motion is . . . within the authority granted to Magistrate Jud[g]es over nondispositive matters under Federal Rule of Civil Procedure 72(a).").

\\\

## II.   SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff filed his state court complaint on December 8, 2025, in the Fresno County Superior Court. (ECF No. 1-1, p. 3). He alleges that Fresno police officers arrested him on December 16, 2024, which led to injuries to his scaphoid. (*Id.* at 4). After being evaluated at the hospital, medical professionals informed Plaintiff and unidentified "accompanying officers" that Plaintiff may need surgery for his injuries. (*Id.*). Although Plaintiff had been given a brace for his wrist to aid his injured bone while healing, unknown Fresno County employees confiscated the brace when Plaintiff arrived at the Fresno County Jail, denied him the use of a brace for two months, and later provided an ineffectual brace. (*Id.* at 4-5).

About four months after his first hospital visit, Plaintiff and unknown Fresno County employees returned to the hospital for a follow-up visit because Plaintiff was experiencing increasing pain from his injury. (*Id.* at 5). Medical professionals told Plaintiff and the accompanying employees that Plaintiff's "bone had in fact died." (*Id.*). Accordingly, rather than a simple surgery, Plaintiff "now needs the scaphoid removed and a fusion of 3 of his other bones in order to ensure the use of his arm and hand." (*Id.*).

Plaintiff asserts that unknown Fresno County employees are denying him surgery because they are reluctant to accommodate the extensive physical therapy needed after the surgery. (*Id.*). And without this surgery, Plaintiff "stands the risk of needing the amputation of not just his hand, but his entire arm." (*Id.*).

On April 16, 2025, Plaintiff sent a letter to the administration at the Fresno County Jail requesting the surgery and asserting a claim for damages with the County of Fresno. (*Id.*). Shortly thereafter, multiple unknown Fresno County employees tackled Plaintiff from behind, threw him to the ground, and beat him. (*Id.*).

Multiple unknown Fresno County employees have retaliated against Plaintiff by beating and tasing him, denying him the use of medication, and unjustifiably relegating him to solitary confinement. (*Id.*).

An unknown Fresno County employee also told Plaintiff, "If you want to file a lawsuit, I'll give you something to file about." (*Id.*).

Plaintiff brings two claims.[1] At issue here is his first claim for "civil rights violations," which is brought against all Defendants based on Federal and state law. (*Id.* at 6) (capitalization omitted). Specifically, he states that his claims are brought under "[t]he constitution and California's Article I, sections 2 and 13," "Civil Code § 52.1[,] and the 1871 Civil Rights Act." (*Id.* at 6, 7).

Generally, he alleges that Defendants (1) failed to provide Plaintiff with adequate medical treatment, and (2) retaliated against him. Plaintiff asserts that "Defendants acted with 'deliberate indifference' and 'reckless disregard' for the wellbeing of [Plaintiff] by ignoring and not taking adequate care of him"; "Defendants deliberately heightened his risk of harm by allowing [him] not to get the proper medical treatment in a timely manner, as dictated by medical staff, allowing his condition to worsen, especially through the Defendants' refusal to allow Plaintiff his antibiotics"; and "Defendants, acting under color of state law, deprived [him] of his constitutional rights to free speech and due process rights through retaliation and attempted censorship, requiring [Plaintiff] to show the Defendants' deliberate indifference or motive to chill speech, and there was no legitimate penological goal which would have justified their actions." (*Id.*).

Plaintiff alleges that "Defendant County of Fresno is vicariously liable for Fresno County Jail Employees'/Staffs' violations, as the Unknown Jail Staff and Unknown C.O.s were acting within the course and scope of their employment." (*Id.* at 7).

Lastly, within his first claim, Plaintiff requests punitive damages, presumably against all Defendants. (*Id.* at 7). However, in his prayer for relief, he requests "punitive damages against the individual defendants." (*Id.* at 8).

### III.    PARTIES' BRIEFING

#### A. Defendant's Motion for a More Definite Statement

Defendant filed its motion for a more definite statement on February 18, 2026. (ECF No. 10). Citing the Ninth Circuit's decision in *Gibson* that addresses "shotgun pleadings," Defendant argues that Plaintiff's first claim for relief is a shotgun pleading because the complaint "combines multiple vague and unrelated alleged constitutional violations, some under state and others under

---

[1] Plaintiff's second claim is for negligence against all Defendants and is not at issue in Defendant's motion for a more definite statement. (*Id.*).

3

federal law, all without identifying the elements of the multiple causes of action plaintiff is apparently attempting to assert or how the County violated those elements." (ECF No. 10, p. 7).

Defendant also notes that Plaintiff's first claim appears to request an award of punitive damages against all defendants—*i.e.*, the County of Fresno and Does 1-10. However, Defendant argues that this request is inconsistent with Plaintiff's second prayer for relief with requests an award of punitive damages as to the individual defendants, *i.e.*, Does 1-10. Defendant contends that it is left "to guess which assertion in the [c]omplaint is the actual punitive damages claim being sought." (*Id.* at 8). And it argues that "California Government Code section 818 expressly bars punitive damages against the County of Fresno." (*Id.*).

Lastly, Defendant argues that, while Plaintiff "does allege that he filed a Governmental Tort Claim for his alleged bodily injury (Complaint ¶ 15)," he "does not allege that he filed a Governmental Tort Claim for his retaliation claims," and is thus "barred from presenting any retaliation claims under state law." (*Id.* at 7).

### B. Plaintiff's Opposition

Plaintiff filed his opposition on April 9, 2026, arguing that his first claim is not a "shotgun pleading". (ECF No. 19). He acknowledges that his first claim for relief alleges multiple theories for relief under both Federal and state law. (*Id.* at 5-6). And he states that "the County of Fresno is sued under federal law based on a *Monell*[2] theory and under state law under a vicarious liability theory." (*Id.* at 6). While Plaintiff states that he "will not pretend that the Complaint is as clear as perhaps it could be," he argues that "[u]nder Federal Rule of Civil Procedure 10(b), each theory of relief does not have to be labeled as a separate cause of action; they only need to be set forth in separate numbered paragraphs" and "Rule 8([d])(2) permits multiple alternative statements of a claim to be set forth in a single count." (*Id.*). Further, he contends that, because he alleges a continual "factual transaction," his case is distinguishable from *Gibson*. (*Id.*). Moreover, his legal theories "are clearly alleged and interrelated." (*Id.*).

Further, Plaintiff argues that Defendant's arguments as to whether he properly seeks

---

[2] *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) (concluding that "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers") (footnote omitted).

4

punitive damages or sufficiently alleges compliance with the Government Tort Claims Act are not proper Rule 12(e) arguments. (*See id.* at 7).

### C. Defendant's Reply

Defendant filed a reply on April 16, 2026, reiterating its argument that Plaintiff's first claim is a "shotgun pleading" because "it includes multiple alleged state and federal civil rights violations in a single cause of action and does not identify what civil rights laws were allegedly violated." (ECF No. 20, p. 2).

## IV.    LEGAL STANDARDS

"If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002). Rule 12(e) provides as follows:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed *but which is so vague or ambiguous that the party cannot reasonably prepare a response*. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. R. Civ. P. 12(e) (emphasis added).

While Rule 12(e) allows a party to challenge a "vague or ambiguous" pleading, the Ninth Circuit has advised district courts "to avoid resolving merits issues, especially fact-sensitive questions, on Rule 12(e) motions." *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1160 (9th Cir. 2009).

Recently, the Ninth Circuit "recognize[d] that Rule 12(e) is an important tool for a *party* to seek clarification" when faced with so-called "shotgun pleadings." *Gibson*, 165 F.4th at 1290 (emphasis in original). "A shotgun pleading is one where a party indiscriminately incorporates assertions from one count to another, . . . prevent[ing] the opposing party from reasonably being able to prepare a response or simply mak[ing] the burden of doing so more difficult." *Id.* at 1288 (alterations in original, quotation marks omitted, citation omitted).

While "[t]here are four main types of shotgun pleadings" the general type that is alleged here is "a complaint that fails to separate into a different count each cause of action or claim for

relief." *Id.*; (*see* ECF No. 20, p. 2 – reply brief arguing that Plaintiff's complaint "includes multiple alleged state and federal civil rights violations in a single cause of action and does not identify what civil rights laws were allegedly violated"). The problem with such pleadings "is that they make it difficult, if not impossible, for the opposing party to formulate a response." *Gibson*, 165 F.4th at 1288. And "permitting parties to file pleadings that do not tie factual averments against specific parties to individual causes of action infringes Rule 8," *id.* at 1290, with Rule 8(a) requiring a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a).

## V.    ANALYSIS

With the above legal standards in mind, the Court agrees with Defendant that Plaintiff's first claim for relief is an impermissible shotgun pleading and will thus grant its motion for a more definite statement as specified below.

As noted above in the summary of Plaintiff's complaint, his first claim is brought "against all defendants" for alleged "civil rights violations." (ECF No. 1-1, p. 6) (capitalization omitted). These civil rights violations are alleged to have occurred under both Federal and state law, including, "Civil Code § 52.1 and the 1871 Civil Rights Act." (*Id.*). Further, Plaintiff brings disparate claims, alleging that "Defendants acted with 'deliberate indifference' and 'reckless disregard' for [his] wellbeing . . . by ignoring and not taking adequate care of him" and that they also deprived him "of his constitutional rights to free speech and due process rights through retaliation and attempted censorship." (*Id.* at 7).

Accordingly, because Plaintiff's first claim bundles together disparate Federal and state law claims into his first cause of action, it is an improper "shotgun pleading." *Gibson*, 165 F.4th at 1291 (noting that complaint was a shotgun pleading, where, among other things, it bundled "five separate causes of action . . . into a single claim").

Moreover, none of Plaintiff's arguments otherwise are convincing. First, Plaintiff asserts that Rule 10(b)—which requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances"—does not require "each theory of relief . . . to be labeled as a separate cause of action; they only need to be set forth in separate numbered paragraphs." (ECF No. 19, p. 6). However, the rule against "shotgun pleadings"

prohibits "a complaint that fails to separate into a different count each cause of action or claim for relief." *Gibson*, 165 F.4th at 1288. Similar to how "[i]ncorporation by reference[,] [although] permitted by Rule 10(b)," becomes impermissible if "used indiscriminately," Plaintiff's indiscriminate bundling of disparate Federal and state claims into a single cause of action, has made "it difficult, if not impossible, for [Defendant] to formulate a response."[3] *Id.*

Similarly, Plaintiff's reliance on Rule 8([d])(2) is misplaced. (ECF No. 19, p. 6). As *Gibson* noted, while "Rule 8(d)(2) permits a party to 'set out 2 or more statements of a claim ... either in a single count ... or in separate ones,' . . . that does not relieve the party of the obligation to set forth 'a short and plain statement of the claim showing that the pleader is entitled to relief' [under] Fed. R. Civ. P. 8(a)(2)." *Gibson*, 165 F.4th at 1291–92.

Next, Plaintiff argues that his case is distinguishable from *Gibson* because he alleges an "overriding factual scenario" and his legal theories "are clearly alleged and interrelated." (ECF No. 19, p. 6). The Court disagrees. While Plaintiff's claims stem from a chronological progression of events (*i.e.*, that he was denied medical care and then retaliated against for complaining about this denial) his legal claims brought under both Federal and state law (*e.g.*, deliberate indifference to serious medical needs (presumably under the Eighth Amendment) and retaliation (presumably under the First Amendment)) are disparate claims that require different supporting factual allegations to prove. *Gibson*, 165 F.4th at 1291 (noting impermissible shotgun pleading of claim that alleged "violations of the First, Fifth, and Fourteenth Amendments," with multiple subclaims under the Fourteenth Amendment).

While the Court will order a more definite statement of Plaintiff's first claim for relief for the reasons given above, it agrees with Plaintiff that some of Defendant's criticisms of the complaint lie outside the realm of Rule 12(e). (ECF No. 19, pp. 6-7).

Notably, Defendant argues that "plaintiff is barred from presenting any retaliation claims under state law" because "plaintiff does not allege that he filed a Governmental Tort Claim for his retaliation claims." (ECF No. 10, pp. 7-8). However, this amounts to an argument that Plaintiff

---

[3] The Court notes that *Gibson* approvingly cited the Sixth Circuits decision in *Lee v. Ohio Education Ass'n*, 951 F.3d 386 (6th Cir. 2020), with *Lee* concluding that the plaintiff violated "Rule 10(b) by failing to separate her causes of action into separate counts." *Gibson*, 165 F.4th at 1289 (citing *Lee*, 951 F.3d at 392-93).

failed to adequately plead compliance with the Torts Claim Act, which "is an actual element of the plaintiff's cause of action." *Creighton v. City of Livingston*, 628 F. Supp. 2d 1199, 1225 (E.D. Cal. 2009) (quotation marks and citation omitted). Because Rule 12(e) is used to clarify vague or ambiguous claims, rather than to "resolv[e] merits issues," the Court will not address this argument to the extent that Defendant requests a ruling. *Creighton*, 628 F. Supp. 2d at 1225.

Likewise, Defendant argues that "California Government Code section 818 expressly bars punitive damages against the County of Fresno." (ECF No. 10, p. 8). This is not an argument that Plaintiff's request for punitive damages is vague or ambiguous; rather, it is an argument that punitive damages are not legally available. Thus, the Court declines to address this argument to the extent that Defendant requests a ruling.[4]

## VI.    ORDER

For the reasons given above, the Court concludes that Plaintiff's first claim for relief is an impermissible "shotgun pleading." Accordingly, IT IS ORDERED as follows:

1. Defendant's motion for a more definite statement of Plaintiff's first claim for relief (ECF No. 10) is GRANTED.

2. By no later than May 6, 2026, Plaintiff shall file a more definite statement of his first claim for relief.

3. Failure to comply with this order may result in the "strik[ing] of the pleading or issu[ance] [of] any other appropriate order." Fed. R. Civ. P. 12(e).

IT IS SO ORDERED.

Dated:    **April 22, 2026**                    /s/ Erica P. Grosjean
                                                UNITED STATES MAGISTRATE JUDGE

---

[4] Further, the Court advises the parties that, before filing a motion regarding these issues, they must meet and confer as directed in the presiding District Judge's standing order. (ECF No. 3-1, pp. 2-3).